**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**CIVIL CASE NO.**

| | |
|---|---|
| **WILLIAM CORLEY and KIA BELLERE, as parents, next of kin, and best friends, for their** minor disabled child, **Z.C.,** | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| **v.** | ) ) |
| **THE SCHOOL BOARD OF VOLUSIA COUNTY, FLORIDA, A/K/A SCHOOL DISTRICT OF VOLUSIA COUNTY, FLORIDA, A/K/A VOLUSIA COUNTY SCHOOLS, a public school and Florida municipal and/or political subdivision,** | ) ) ) ) ) ) ) ) |
| *Defendant.* | ) ) / |

---

**COMPLAINT WITH DEMAND FOR JURY TRIAL**

---

**COMES NOW Plaintiff, WILLIAM CORLEY and KIA BELLERE, as parents, next of kin, and best friends, for their minor disabled child, Z.C., ("The Corleys" or "Plaintiffs"),** by and through their undersigned counsel, and files this *Complaint With Demand for Jury Trial* against **THE SCHOOL BOARD OF VOLUSIA COUNTY, FLORIDA, A/K/A SCHOOL DISTRICT OF VOLUSIA COUNTY, FLORIDA, A/K/A VOLUSIA COUNTY SCHOOLS,** a public school and Florida municipal and/or political subdivision, **Defendant ("Volusia")**, <u>and so states</u>:

1

## I.    <u>NATURE OF THIS ACTION</u>

This is an action for damages in excess of $5,000,000 including Attorney's Fees, exclusive of costs and interests, for damages Defendant, a government entity and public school acting under color of law,  caused disabled minor Z.C. under Section 504 of the Rehabilitation Act of 1973 and American with Disabilities Act, Title II *("ADA"),* as amended; the Fourth and Fourteenth Amendments of the U.S. Constitution; and *Monell;* and for compensatory education damages and Attorney's Fees under review and reversal of the Administrative Law Judge's Order in favor of Defendant in the administrative remedy due process hearing held pursuant to IDEA (20 U.S.C.§ 1415, 1416, 1418, 1419, 1439) and 34 C.F.R. §300.516 where Defendant failed to provide Plaintiff with a Free and Appropriate Education ("FAPE") as required under IDEA.  Z.C. is a seven-year-old elementary student who has been on an Individual Education Plan ("IEP") since <u>pre-kindergarten</u>, and whose disabilities include developmental delay, language impairment, speech impairment, autism.

Volusia has been under federal DOJ oversight for multiple years specifically for its pattern, policy, custom, and/or policy of repeat and multiple violations of the rights of multiple of its disabled students. Despite that oversight wherein it self-reported its alleged compliance, Defendant committed many violations against Z.C. during that same time.  [**<u>EXHIBIT A</u>**].  To add insult to injury, Volusia even locked this little disabled kid up in a bathroom and refused to release him, despite him crying and begging to be freed.

## II. <u>**JURISDICTION, VENUE, AND PARTIES**</u>

1. Jurisdiction is properly invoked in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4), 42 U.S.C. §1983 and §1988, the ADA and Section 504 of the Rehabilitation Act of 1973, respectively ("The Rehab Act"), as amended, 28 U.S.C.A. §2201, 2202 and 42 U.S.C.A. §12101 et seq., the Fourth and Fourteenth Amendments to the U.S. Constitution, wherein the claims herein arise under the U.S. Constitution and laws of the United States, with 42 U.S.C. §1983 as the enabling statute, and ("IDEA") 20 U.S.C.§§ 1415, 1416, 1418, 1419, 1439, 34 C.F.R. §300.516, and Florida Administrative Code Rule 6A-6.03311(9)(w), wherein Plaintiff exhausted his Administrative remedies as required through administrative due process hearing.

2. Supplemental jurisdiction for state law claims is proper under 28 U.S.C. §1367(a), because the facts giving rise to these claims form part of the same case or controversy in federal and state law.

3. Venue is properly invoked under 28 U.S.C. §1391(b) insofar that at all times material hereto, the events giving rise to this Complaint occurred at Defendant's public school system/place of business in the city of Deland, Volusia County, Florida; on school days during its regular operating school hours wherein its students and staff were present on campus; Plaintiffs reside in Volusia County, Florida; Z.C. attends school in Volusia County, Florida; and, Volusia County, Florida, is physically located within this District Court's judicial district and division.

4. Plaintiff, Z.C., is a seven-year-old disabled minor student, who at all times material hereto, attended Volusia County Schools and resided(s) in Volusia with his parents, next of kin, and best friends, WILLIAM CORLEY and KIA BELLERE. He is a member of a protected class

based on his disabilities and has federally protected rights to be free from discrimination, exclusion, and reprisal based on his disability under federal laws and the U.S. Constitution, to be free from unlawful detention under the U.S. constitution, and the rights to due process and equal protection under the U.S. Constitution. He has the right to a FAPE and procedural safeguards pursuant to IDEA.   The Corley's are all residents of Volusia County, Florida, and otherwise *sui juris.*

5. Defendant, THE SCHOOL BOARD OF VOLUSIA COUNTY, FLORIDA, A/K/A SCHOOL DISTRICT OF VOLUSIA COUNTY, FLORIDA, A/K/A VOLUSIA COUNTY SCHOOLS, is a government entity public school and Florida municipal and/or political subdivision, **acting** under color of law through its agents, representatives, employees, staff, assigns, and/or school board including its superintendent.  Its principal place of business is located in the city of DeLand, Volusia County, Florida.  Its final decision and policy maker(s) are its School Board and/or Superintendent Carmen Balgobin. Volusia operates as a public school and political subdivision subject to civil suit wherein it operates, controls, and supervises all public schools in its district, and is empowered to make and establish policies for its school system, pursuant to Article IX, §4(b), of the Florida Constitution, and F.S. §1001.32(2) and 1001.41(4), and is a person acting under color of state law pursuant to 42 U.S.C. §1983. Volusia is a public school receiving public funds subject to IDEA, and is subject to federal and state laws and the U.S. Constitution.

6. This court has both subject matter and personal jurisdiction over the parties.

4

7.  Plaintiff exhausted his Administrative remedies prior to his IDEA claim herein.

8.  All conditions precedent to the filing of this federal lawsuit have been met, satisfied or waived by Defendant.

**II.**

**GENERAL ALLEGATIONS**

9.  Plaintiff renews and re-alleges paragraphs 1-8 as if plead herein.

10. Z.C. is a seven-year-old first grade ESE (exceptional student education/special needs) student with disability diagnoses of autism, developmental delay, language impaired, speech impaired, and ADHD.

11. At all times material hereto, he was an ESE and Section 504 student enrolled in Volusia County Schools, placed on an Individual Education Plan ("IEP") for his disabilities since pre-kindergarten in 2022. [1]

12. He is a recognized/qualified individual with a disability and member of a protected class based on his disability.

13. Due to his disabilities, Volusia's team has assessed and is on notice that Z.C. functions developmentally at an age lower than his numerical age of seven years.

14. Defendant Volusia, as operators and policy makers of its public school system, and as a public school receiving federal funds,  was and is at all times material hereto, charged with the care and duty of care, custody, and control of minor children, and  a

---

[1] Volusia holds itself out to the public as "*Volusia County Schools*' on its website www.vcsedu.org, and has a sign in front of its Administrator Complex where it holds itself out as "T*he School District of Volusia County*."

duty, to protect its disabled students from discrimination, exclusion, reprisal, and other violations of their rights under The Rehab Act, ADA, federal laws, and the U.S. Constitution, specifically here the Fourth and Fourteenth Amendments. Volusia owed these duties and enforcement of rights also to Plaintiffs, including disabled minor student Z.C.

15. Defendant Volusia, as operators and policy makers of its public school system, and as a public school receiving federal funds, was and is at all times material hereto, charged with the care and duty of care, custody, and control of minor children, and a duty, to provide its disabled students with a Free and Appropriate Education ("FAPE"), lawful procedural safeguards, and to comply with the IEP pursuant to IDEA. Volusia owed these duties and enforcement of rights also to Plaintiffs, including Z.C.

16. Volusia offers multiple of its academic and school-related programs, resources, services, and school-related information and benefits to its students within the classroom setting.

17. The Americans with Disabilities Act, Title II, applies to State and local government entities such as Volusia, and, in subtitle A, protects qualified individuals with disabilities from discrimination on the basis of disability in services, programs, and activities provided by State and local government entities.

18. Title II extends the prohibition on discrimination established by Section 504 of the

Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, to all activities of state and local governments regardless of whether these entities receive Federal financial assistance.

19. Z.C. was placed on a 504 and IEP due to his disabilities. Commencing with Z.C.'s first IEP (collectively "IEP"), Volusia was required to provide quarterly updates to his parents.

20. Volusia failed to comply with Z.C.'s IEP.

21. For example, Z.C. failed to provide the required quarterly updates to Z.C.'s parents.

22. Volusia also failed to explain to Z.C.'s parents their rights and Z.C.'s rights based on his disability under federal laws to include The Rehab Act, ADA, and IDEA.

23. In another example, Volusia failed to inform Z.C.'s parents that they could request additional IEP meetings. His parents were later informed of this right by another parent and/or counsel.

24. In yet another example, Volusia failed to ensure Z.C.'s parents were aware of and provided all medically necessary services to assist Z.C. in progressing and improving in the goals of his IEP and benefits of his education such as the different modalities of therapy (e.g., OT, PT, Speech, SLP). His parents did not learn of their rights to request and advocate for these services until later informed by a parent and/or counsel.

25. In another example, Volusia failed to inform the parents of their rights to be active participants and advocates for their disabled child in the IEP meetings and/or throughout the school year; instead instructing the parents as if only Volusia's input

mattered regarding Z.C.'s IEP goals, assessments, background history, and effective interventions.   Z.C.'s parents were later informed of their rights to be actively involved in the design, establishment, and implementation of Z.C.'s IEP by other parents and/or counsel.

26. Z.C. was his parents' first experience with having a disabled child, and with special needs.

27.  Within Z.C's  IEP were listed behaviors and conduct to be reasonably expected from him caused by, arising from, and resulting from, his disabilities, and that such behaviors would show as from a kid younger than his chronological age due to his developmental delay, language impairment, speech impairment, and diagnosed other disabilities known to Volusia.

28. Those behaviors included not always understanding direction, not always responding positively, not sharing or taking turns, not always exhibiting appropriate behavior in social settings, inadequate understanding of directions and sentences, inadequate reasoning skills and judgment for his age.

29. As a result, Z.C. required/s assistance in, *inter alia,* Curriculum and Learning, Social and Emotional Learning, Independent Functioning, Communication, and various other services and diagnostics available to ESE students such as language therapy, special accommodations in the classroom, and so forth.

30. However, Volusia commenced a repeat series of excluding Z.C. from the classroom,

his medically necessary services, and special accommodations through multiple unlawful and unwarranted out-of-school-suspension ("OSS") for behaviors caused by, arising from, and resulting from his disabilities.

31. In fact, although Z.C. is currently only in the first grade, Volusia has already OSS him multiple times; issued OSS extending multiple consecutive days; noticed expulsion for him; and unilaterally withdrew him from school by informing the parents that same day that they were to come and pick him up from school and not bring him back.

32. During those multiple OSS' Volusia failed to ensure, offer, or provide, Z.C. with any of the disability-based resources, programs, and services he received when in school. For example, Volusia did not provide, offer, nor ensure that Z.C. received his Speech and/or Language Therapy during these multiple times Volusia forced him to be excluded from the classroom.

33. Further, although Volusia had the option of in-school-suspension, it never used that option for Z.C., always instead issuing him OSS, all the way until the pendency of the administrative due process hearing after Plaintiff raised the issue of it always issuing unlawful and unwarranted OSS to Z.C.

34. Volusia unlawfully repeatedly excluded Z.C. from the classroom, and access to its programs and services provided to his disabled and non-disabled classmates/peers.

35. In fact, most of Volusia's actions and violations against Z.C. in the preceding

paragraphs occurred during the same time it was on DOJ oversight for its multiple violations of the rights of its disabled students. [**<u>SEE EXHIBIT A</u>**.].

36. Further, some of those same actions and violations above against Z.C. occurred during the pendency of the administrative due process matter.

37. Volusia also failed and refused to listen to the input of Z.C.'s parents that Z.C. was easily redirectable, to include the fact that he stayed overnight at the homes of friends without his parents present, and was easily redirectable by those parents with no physical violence toward the parents and/or children in those homes, and with homes where he visited on playdates without overnight stays.

38. Volusia instead made Z.C. out to be some type of violent monster at its meetings, to the point where his mother would break down crying at the meetings, especially since she repeatedly offered recommended interventions and did not see nor receive reports of that same alleged uncontrollable behavior at home, or was away from home with other parents, including in overnight stays.

39. Volusia's false allegations against Z.C. escalated as his parents complained against Volusia's violations of his rights, and especially after his parents informed Volusia of their intent to commence litigation after Volusia locked Z.C. in the bathroom in class and refused to release him.

40. Volusia was pre-textually bolstering Z.C.'s school record with unlawful and retaliatory discipline  through its false allegations against disabled minor Z.C.

41. In example, although Volusia agreed in the IEP that it would call Z.C.'s mother as requested by her, a stay-at-home mom, to speak with Z.C. over the phone or come to assist him at school if there were incidents at school or intervention was needed to calm him, Volusia outright refused to do so.

42. In fact, the only time Volusia called Z.C.'s mom regarding Z.C. was after it had already OSS'ed Z.C. for his disability-related conduct, i.e., for her to come pick him up because he was suspended.

43. Volusia would have already issued the written OSS at the time of calling his mother, and have noted on the written OSS that it explained the suspension to the disabled minor child Z.C., who understood "and did not deny the allegations."

44. In another example, especially after Z.C.'s parents complained of Volusia's violations against Z.C. concerning the multiple unlawful OSS, Volusia commenced issuing OSS' verbally to conceal its unlawful OSS and exclusion of Z.C. from the classroom, calling Z.C.'s mother to come pick him up from school and ordering that he could not be returned the same day.

45. In another example, Volusia commenced falsely documenting Z.C.'s attendance record to conceal its unlawful violations and exclusion from the classroom, listing days in which it had OSS'ed Z.C. as voluntary "absences."

46. Volusia excluded disabled minor Z.C. from the classroom, and its services, programs, and the benefits of his education.

11

47. Volusia failed to involve Z.C.'s parents in his education to ensure that Volusia provided Z.C. the same rights and treatment as all other students, including his parents right to be involved in his education disciplinary decisions substantially affecting his education and receipt of his disability-related services and programs to improve and progress in the goals and benefits of his disability related education services.

48. In another example, Volusia frequently did not follow the agreed interventions such as appropriately re-directing Z.C.; contacting his parents; involving his parents in disciplinary decisions; or other agreed interventions, but instead would tell only Z.C.'s mother at the end of the day that Z.C. had allegedly been acting out all day throughout multiple classes or lessons, after Volusia had already disciplined Z.C. for his easily redirectable conduct arising from his disabilities.

49. In another example, Volusia would repeatedly issue and enforce multiple unlawful and unwarranted OSS' covering multiple consecutive days of Z.C. for alleged infractions, without any involvement of his parents and in outright refusal of the parents' request to involve them in these substantially adverse disciplinary decisions prior to making the decision.

50. Volusia also made these decisions in violations of its own policy for suspensions, including refusing to discuss the OSS with the parents.

51. Volusia refused to allow Z.C.'s parents to appeal its OSS, although it has a student

disciplinary appeal and/or grievance policy.

52. Volusia's violations of Z.C.'s rights and reprisal went all the way to its final decision and policy makers of its Board and Superintendent, who were noticed in writing but failed to address its violations, meet with or allow Z.C.'s parents to appeal, remediate its actions,  or cause to cease its unlawful violations against Z.C.

53. Volusia's actions caused Z.C. to suffer many days of missing full school days and to be excluded from school and the classroom; Volusia's services and programs; and his medically necessary services under his IEP to assist and facilitate progression and improvement toward  his IEP goals, benefits of his education  as part  of his services for this disability.

54. Volusia's constant unlawful suspensions also substantially interfered with Z.C.'s ability to progress and improve to meet the goals of his IEP and services, because so many missed school days substantially interfered with Z.C.'s learning and access to services and resources provided at school as part of his IEP and related to his disability.

55. Further, one of Volusia's teachers and/or paraprofessionals locked Z.C. in the bathroom in class.

56. Z.C. was crying, pleading, and begging to be freed.

57. He began banging on the door, screaming and begging to be freed.

58. Volusia's employee refused to open the door and release him.

59. Z.C. was petrified and banging on the door to be released, to no avail.

60. It was only after a teacher from another classroom heard him screaming and begging to be released and entered that classroom compelling his release, that Volusia's employee released this disabled child.

61. Volusia's actions against that five-year-old ESE disabled student substantially and significantly traumatized him, and his parents. They literally became afraid in class that this would recur.

62. However, although on notice of what occurred, Volusia did not inform Z.C.'s parents of what it did to him, i.e., locking him in the bathroom  Instead, Volusia reported an "incident" to the parents in which it omitted the actions of its employee, instead telling his parents that Z.C. had a bathroom incident regarding his shoelaces.

63. It was only after Z.C.'s parents subsequently learned the truth of what occurred from another source, that Volusia admitted to the actions against Z.C. by its employees.

64. Volusia's actions against Z.C., ongoing failure to communicate with his parents about his progress in school, IEP, services, and resources, as well as its unlawful continued suspensions of Z.C. for his disability caused his parents to increase their efforts to locate advocates and/or counsel who could help them regarding their special needs child, also causing his parents to incur expenses retaining undersigned.

65.  Z.C.'s parents had to retain counsel and incur Attorneys Fees to get IEP meetings scheduled, explained, and additional services put in place for Z.C.

66. They had to retain counsel to file the administrative due process complaint and represent Z.C. in that two-day hearing process.

67. They had to retain counsel to represent them in the instant action.

68. In fact, multiple times since being retained, undersigned counsel, and Z.C.'s parents have met with Volusia in attempt to resolve Volusia's unlawful acts toward Z.C., to no avail.

69. Volusia only escalated its retaliation and unlawful behavior against Z.C. by having its Principal and other adults physically restrain this kid who's not even yet in second grade, stating it took that amount of physical force to control him.

70. Volusia's adult employees took the above physically restraint actions against Z.C. despite knowing the trauma previously caused to him when another employee had locked him in the bathroom months prior.

71. Volusia was on actual notice of the locking of Z.C in the bathroom when they physically restrained him on August 14, 2024. Yet, throughout all this time of multiple levels of staff coming including the Principal and/or Assistant Principal, evacuating the other students, taking Z.C. to the office, not one person called his parents.

72. And of note, both the Assistant Principal and Principal have been present during his IEP meetings with counsel and his parents. Both have witnessed his mother crying out in tears, begging them to please call her and explaining the trauma to Z.C. and his parents from him being locked in the bathroom, as well as the substantial detriment

to Z.C. of Volusia continuing to interfere with his education and services through loss

of his therapy and other services/accommodations during these multiple OSS.

73. Volusia admitted that it does not provide nor has it offered Z.C. any of the services or

accommodations listed within his IEP that he receives in the classroom, during the

time of its OSS' of Z.C.

74. Further, due to Volusia's serial suspending of Z.C., he cannot consistently receive the

necessary services at school.

75. Moreover, the suspensions are impermissible, retaliatory, and unlawful adverse

discipline and violations of Z.C.'s IEP, based on his disability-related conduct of

which Volusia is already on notice.

76. Volusia's acts are pre-textual in order to conceal its non-compliance with state and

federal laws, and in retaliation for the complaints by Z.C.'s parents regarding

Volusia's non-compliance.

77. Z.C.'s parents also believed Volusia was creating this pre-textual record in hopes of

not having to retain Zane in its school system, and true to that belief, Volusia did

moved Z.C. from the school he attended without notice, informing his parents that

they had to come to school and retrieve him and not bring him back at all, on the same

day and time that it informed the parents that he could not return.

78. Volusia unlawfully expelled Z.C. from the school he was attending.

79. Volusia is the only place making these false complaints against Z.C., and the false

complaints have increased in frequency and severity after his parents complained about not receiving or understanding the IEP and subsequently the locking of their disabled child in the bathroom by, at, and in Volusia.

80. *To wit,* Z.C. spends the night and goes on play dates with other children and families for hours at a time or stays overnight. Nobody reports these problems or escalation with Z.C. as does Volusia, and all adults state that Z.C. is easily redirectable.

81. Volusia's non-compliance with his IEP and retaliation against Z.C. is at fault for any escalation or alleged uncontrollable escalation in his disability-relate known behaviors.

82. Volusia's actions are also directly infringe and preclude Z.C.'s parents rights to be involved in and make decisions regarding the education of their son; appeal discipline of their son; and to be involved in the establishment and goals of his IEP and procedural safeguards.

83. Many days, Volusia waits until Ms. Bellere picks up Z.C. from school, and then bombards her with an onslaught of alleged deviant behaviors by Z.C. occurring throughout the entire day, but never called or notified her during the day as agreed in Z.C.'s IEP.

84. When Volusia does call Ms. Bellere during the school day, it is with requirement that she come and take Z.C. home and not bring him back that day, i.e., another of Volusia's OSS which it attempts to conceal through these verbal orders.

85. His parents have addressed this onslaught many times during IEP meetings, informing Volusia that it makes them feel that he is nothing but a failure to receive such horrible news each pick up day.

86. To further bolster its unlawful pretextual false and retaliatory acts against Z.C. after his parents complained and retained counsel, Volusia commenced multiple additional meetings of "crisis" meetings and behavior-related meetings and safeguards, repeatedly accusing Z.C. of allegedly being violently dangerous.

87. Those allegations are inconsistent with Z.C.'s known behaviors not only elsewhere, but by other professional within Volusia's school system.

88. Further, Volusia withheld its available OT assessment, evaluation, and services from Z.C. despite his parents' repeat requests for provision of all available disability related services.

89. Those services were just recently added to his IEP, and showed that Z.C. has proprioception and distance problems, to where he reaches out to touch and strike objects or persons to ascertain his own placement in confines of space and time, becoming fearful because he does not know where he is in relation to other people or objects, and giving interventions to calm, prevent, or de-escalate these disability-related behaviors.

90. Yet, Volusia had repeatedly OSS'ed Z.C. for the same conduct arising from his proprioception and sensory issues, which it would have known earlier if it had not

withheld its available OT services from Z.C.

91. Every one of Volusia's suspensions of Z.C. arise from, are caused, by, resulting from/ and/or related to, his disability, and Volusia's own non-compliance with his IEP.

92. Volusia's ongoing wrongful and unlawful suspensions, IEP non-compliance, out-of-school suspensions ("OSS"), and violation of his due process rights, substantially and adversely interfered and interfere with his right to receive full-day education, to the detriment of his access to and receipt of a free and appropriate education and all other education, due process, and other rights under Florida and federal laws.

93. Volusia's ongoing wrongful and unlawful suspensions, IEP non-compliance, out-of-school suspensions ("OSS"), and violation of his due process rights, substantially and adversely interfered and interfere with his rights under The Rehab Act and ADA, Title II, as well as his constitutional protections under the Fourth and Fourteenth Amendments.

94. Volusia's ongoing wrongful and unlawful suspensions, IEP non-compliance, out-of-school suspensions ("OSS"), retaliation, and violations of his due process rights, substantially and adversely interfered and interfere with his right to receive the aid and services required and agreed for his disability-related behavior, to the detriment of his access to and receipt of a FAPE under IDEA and all other education and other rights under Florida and federal laws.

95. Z.C.'s academic progress and abilities are substantially hindered and delayed due to

Volusia's unlawful actions against him.

96. Volusia's actions have caused Z.C.'s disability to exacerbate.

97. Both Z.C. and his parents have suffered and continue to suffer physically, emotionally, financially, mentally, and fear of further retaliation and lack of FAPE due to Volusia's unlawful actions against them.

98. Moreover, Volusia has a pattern, practice, custom, and unwritten policy of violating the rights of its disabled students in violation of federal laws, the U.S. Constitution, and/or IDEA, known, established, perpetuated,  and/or ratified all the way to nd from its final decision-makers.

99.    Volusia's leadership and Final Decision Makers to include its Board and/or Superintendent were already on notice of Volusia's unlawful practices and violations of federal and state laws concerning its special needs and disabled students prior to its unlawful violations of Z.C.'s rights alleged herein, but did not cease its unlawful conduct prior to unlawful violations of disabled minor Z.C.'s rights.

100.    Volusia was already determined by the U.S. government to be in multiple violations of the rights of its disabled students to a FAPE and violations of other federal law and placed under DOJ oversight.  **[SEE EXHIBIT A]**.

### III.
### FEDERAL CLAIMS

### COUNT I – 20 U.S.C.§ 1415, 1416, 1418, 1419, 1439, 34 C.F.R. §300.516:

### IDEA/FAPE DUE PROCESS VIOLATIONS

101.    Plaintiff incorporates and re-alleges paragraphs 1-100 as if plead herein.

102.    Defendant Volusia is being sued in its official capacity.

103.    As shown in the transcript of the administrative Final Hearing, Volusia failed to comply with Z.C.'s IEP and Procedural safeguards pursuant to IDEA, and caused Z.C. to miss multiple days of disability related education and services through its series of unlawful OSS, to include multi-consecutive day OSS.[2]

104.    Volusia also caused Z.C.'s parents to retain counsel to advocate for his rights and proceed with representation in his administrative due process hearing.

105.    As the direct and proximate cause of Volusia's actions, Z.C. was excluded from provision of many of his services, which are scheduled on an hourly and/or time basis, and thereby compensable.  Volusia also caused Z.C. to suffer emotionally, academically, mentally, and physically in the form of nightmares, headaches, anxiety, crying, increased frustration, and heightened fear.

106.    Wherefore, Volusia failed to comply with IDEA regarding its minor disabled student Z.C., and all allowable compensatory damages are requested for the lost services, and awarding of Attorneys fees in that representation.

### IV.  ATTORNEYS FEES

107.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

### V.
### PRAYER FOR RELIEF AND DAMAGES

---

[2] The Transcript of the Administrative Final Hearing will be filed separately into the instant case.

**WHEREFORE**, ALL PREMISES CONSIDERED, Plaintiff requests this Honorable

Court:

A. Enter judgment in Plaintiff's favor and against Defendants for all damages

requested herein, including attorneys' fees under 42 U.S.C. §1988, and such other

relief that this Court deems just and proper under the law.

D.  Plaintiff further prays for all other lawful relief, both legal and equitable, to

which Plaintiff is justly entitled.

## VI.
## JURY DEMAND

Plaintiff respectfully requests a jury trial in this matter on all claims.


Respectfully Submitted this **8th day of May 2025**

By: /s/ Rawsi Williams
    Rawsi Williams, Esq. R.N.
    State Bar No. 103201
    RAWSI WILLIAMS LAW GROUP
    701 Brickell Ave., STE 1550
    Miami FL  33131
    TEL:  888-RawsiLaw/888-729-7452
    Email:rawsi@rawsi.com;
    Ajoseph2@rawsi.com;
    service@rawsi.com
    Lead Attorney for Plaintiff

    /s/ Frank T. Allen
    Florida Bar No. 0033464
    Frank Allen, Esquire
    2582 Maguire Rd.

Ocoee, Florida 34761
Telephone: (407) 481-8103
Email: Allen551@aol.com
Attorney for Plaintiff